IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREL VILLAGE BAKERY LLC, | No. C06-01332 MJJ |
| Plaintiff, | **ORDER RE DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| GLOBAL PAYMENTS DIRECT INC, | |
| Defendant. | |

Pending before the Court is Defendants Global Payments Direct, Inc., HSBC Bank USA, N.A., and Mercury Payment Systems, LLC's (collectively, "Defendants") Motion to Dismiss Complaint due to Improper Venue or, Alternatively, for Failure to State a Claim Upon Which Relief can be Granted (Doc. #7). Plaintiff Laurel Village Bakery, LLC has filed an Opposition (Doc. #14), to which Defendants filed a Reply (Doc. #20). For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss for Improper Venue, and **DENIES AS MOOT** Defendants' Motion to Dismiss for Failure to State a Claim.

I.   Background

This case centers around a Card Services Agreement between Plaintiff and Defendants Global Payments and HSBC wherein Defendants agreed to process Plaintiff's debit and credit card transactions in exchange for certain fees. Specifically, Plaintiff alleges that "Defendants represented to Plaintiff's [sic] in the Card Services Agreement that Plaintiff would be charged a Discount Rate of 1.69 percent per transaction and $.20 per transaction." However, Plaintiff alleges that Defendants charged Plaintiff

and other putative class members fees that exceeded those disclosed in the Card Services Agreement. According to Plaintiff, "[t]hese unauthorized charges were beyond and contrary to the agreed Discount Rates stated in the Card Services Agreement, and were without any specific authorization by Plaintiff and other class members.  Moreover, [] the amounts of these surcharges were in excess of the [Non-Qualified Surcharge] charges imposed by credit card associations and/or the card insurers.  Each representation to a bank of amounts owed that exceeded the contract rate was an intentionally fraudulent representation." With respect to Defendant Mercury, Plaintiff alleges that "Mercury, working on behalf of Global and HSBC, solicited Plaintiff to sign the Card Services Agreements with representations that the fixed percentage fees contained in the Card Services Agreements, and other charges set forth in that contract, were the amounts to be charged by Global and HSBC."

Based on these allegations, Plaintiff filed a Class Action Complaint against Defendants asserting claims for: (1) breach of contract; (2) fraud; and (3) unlawful business acts/unlawful business practices in violation of California Business & Professions Code § 17200.  Defendants now move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue and pursuant Rule 12(b)(6) for failure to state claim.  Because the Court finds Defendants' argument with respect to venue dispositive, it turns to that issue first.

II.     Motion to Dismiss due for Improper Venue

Paragraph 17 of the Card Services Agreement between the parties contains a forum selection clause providing:

> Global Direct, Member [*i.e.*, HBSC], and Merchant [*i.e.*, Plaintiff] agree that all disputes arising out of or relating to this Card Services Agreement shall be governed by the laws of the State of Georgia, notwithstanding any conflicts of law rules.  Global Direct, Member, and Merchant agree that all actions arising out of or relating to this Card Services Agreement shall be brought in the courts of the State of Georgia sitting in DeKalb County and expressly agree to the exclusive jurisdiction of such courts.

(Doc. #15, ex. 2 at 7.)  Relying on this provision, Defendants argue that venue in the Northern District of California is improper, subjecting Plaintiff's case to dismissal.  Plaintiff, however, contends that the forum selection clause is unenforceable and maintains that the Northern District of California is a proper venue for this action.

2

A.  Legal Standard

A motion to enforce a forum selection clause is treated as a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).[1] *See Arguenta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996). In reviewing a 12(b)(3) motion, the Court need not accept the pleadings as true and may properly consider facts outside the pleadings. *See id.*; *Kukje Hwajae Ins. Co. v. The "M/V Hyundai Liberty"*, 408 F.3d 1250, 1254 (9th Cir. 2005). If resolution of a 12(b)(3) motion depends on facts that are genuinely disputed, the court can hold an evidentiary hearing to resolve the factual dispute. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

Generally, interpretation and enforcement of contractual forum selection clauses are procedural issues to be decided pursuant to federal law. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Under federal law, a forum selection clause is presumptively valid and should not be set aside unless the party challenging the clause shows that enforcement would be unreasonable under the circumstances. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Sariento v. BMG Entm't*, 326 F. Supp. 2d 1108, 1110 (C.D. Cal. 2003) (citing *M/S Bremen*). A court may repudiate a forum selection clause if: (1) the clause was included as a result of fraud, undue influence, or overreaching; (2) enforcement of the clause will deprive the opposing party of its day in court because of grave inconvenience or unfairness of the selected forum; or (3) public policy strongly favors resolution in the forum in which the suit is brought. *See Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1992); *Sariento,* 326 F. Supp. 2d at 1110.

B.  Discussion

As indicated above, contractual choice of forum clauses are presumptively valid. Thus, as the party seeking to file this lawsuit in a location other than that specified in the clause, Plaintiff bears the burden of establishing that the forum selection clause in Paragraph 17 of the Card Services Agreement is unenforceable. Toward this end, Plaintiff argues that the clause selecting DeKalb County as the exclusive forum for disputes contravenes Georgia law regarding venue in civil cases, and is therefore unenforceable. Specifically, Plaintiff argues that in *Fidelity & Deposit Co. of Maryland v. Gaineseville*

---

[1] Pursuant to 28 U.S.C. § 1406(a), the Court may also transfer an action if it is filed in a district other than that designated in the forum selection clause. Because the forum selection clause in this matter limits the parties to Georgia state court, transfer is not an option.

3

1 *Iron Works, Inc.*, 189 S.E.2d 130 (Ga. Ct. App. 1972), the Georgia Court of Appeals held that contracts 2 that seek to set venue in counties other than those specified by state statute are void. Citing Georgia 3 Code § 14-2-510(b)(1), Plaintiff contends that venue in civil actions against a corporation is the county 4 where the corporation maintains its registered office. Because Global's principal place of business is 5 in Fulton County, Plaintiff asserts that, under Georgia law, venue is only proper in that county and the 6 Card Services Agreement's attempt to restrict venue to DeKalb County contradicts Georgia law and is 7 therefore void. Relatedly, Plaintiff argues that the clause is invalid because Georgia law does not allow 8 for contractual venue selection provisions, and cites *Regency Mall Associates v. G.W.'s Restaurant, Inc.*, 9 444 S.E.2d 572 (Ga. Ct. App. 1994), and *Huddle House, Inc. v. Paragon Foods, Inc.*, 587 S.E.2d 845 10 (Ga. Ct. App. 2003), in support.

11 Defendants reply that federal law - not Georgia law - governs the enforceability analysis, and 12 assert that Plaintiff has failed to make any argument under federal law preventing enforcement of the 13 clause. Further, to the extent that Plaintiff relies on Georgia law, Defendants argue that Plaintiff 14 misconstrues Georgia's venue laws. Particularly, Defendants argue that the *Fidelity* decision on which 15 Plaintiff relies is limited to cases when a contractual choice of forum clause purports to restrict venue 16 to a particular county within Georgia *and* the case involves "an intrastate conflict and there is an 17 applicable Georgia statute, which governs venue," and that statute restricts venue to a different county 18 than the one specified by the clause. Because this case stems from an interstate conflict, Defendants 19 assert that the *Fidelity* doctrine does not apply, and Plaintiff's argument that the forum selection clause 20 in unenforceable in light of Georgia's public policy fails.

21 The Court has considered the parties' arguments and agrees with Defendants. As detailed above, 22 federal law governs the enforceability of forum selection clauses and the Ninth Circuit has recognized 23 three potential grounds upon which Plaintiff may seek to avoid enforcement of the forum selection 24 clause. Here, Plaintiff has not argued that the clause was the result of fraud or overreaching, and has 25 not made any argument that forcing Plaintiff to litigate in Georgia is either unfair or prejudicial. Rather, 26 Plaintiff's argument is that the clause offends Georgia law, and the Court should therefore allow 27 Plaintiff to litigate the case in the Northern District. Assuming that this argument falls within the third 28 bases for unenforceability set forth in *Richards*, the question then becomes: is the forum selection clause

4

invalid under Georgia law, such that enforcing the clause is contrary to public policy. On this issue, the Court agrees with Defendants.

Plaintiff proffers that the forum selection violates Georgia law for two reasons. First, it argues that § 14-2-510(b)(1) fixes the venue in civil actions against a corporation in the county where the corporation maintains its registered office. Because Global's headquarters are in Fulton County, Plaintiff argues that "the clause in the Card Services Agreement establishing DeKalb County as the forum for all claims between the parties is unenforceable under Georgia law." Second, Plaintiff argues that "Georgia law does not allow for contractual venue selection provisions." (Opp. at 3.) However, as Defendants point out, Plaintiff's assessment of Georgia law is inaccurate. Plaintiff relies on three decisions in support of its position: *Fidelity*, *Regency Mall Associates*, and *Huddle House*.

In *Fidelity*, the plaintiffs sued defendant sureties on a labor and material payment bond, and the defendants moved to dismiss based on a forum selection clause limiting venue for suit to counties in which the underlying construction project was situated. 189 S.E.2d at 130-31. The trial court denied the motion, and defendants appealed. On appeal, the court noted that Georgia Insurance Code § 56-1201 declared the public policy of the state in fixing venue of actions against insurers to include the county where the principal office is located, any county where there is an agent or place of business, any county where there was an agent or place of business when the claim accrued or the contract was made, and any county where property covered by the claim is located or where the claimant is a legal resident. *Id.* at 131. In light of this statute, the court held: "We think it follows that the provisions of the bond, in limiting venue solely to forums of the county or other political subdivision where the project is situated, are unenforceable as contrary to public policy." *Id*.

Plaintiff also relies on *Regency Mall Associates*. In that case, a Georgia trial court invalidated a judgment that the plaintiff Regency Mall obtained from an Ohio court against G.W. Restaurant, Inc, a Georgia company, on the basis that a provision in a contract between the parties fixing jurisdiction in an Ohio court was void as against the public policy of Georgia.[2] 444 S.E.2d at 572. In reviewing the

---

[2] The clause stated; "Any action, suit or proceeding relating to, rising out of or in connection with the terms, conditions and covenants of this lease may be brought by lessor against lessee in the Court of Common Pleas of Mahonig County, Ohio. Lessee hereby waives any objection to jurisdiction or venue in any proceeding before said court."

5

1 plaintiff's appeal from the trial court's ruling, the appellate court first noted that: "While it is the public
2 policy of this state that provisions fixing the venue of an action on the contract are void [], the contract
3 provision in this appeal is not such a provision. Instead, this type of provision is a forum selection
4 clause which does not offend the principles of *Fidelity*[.]" *Id*. The court further noted that the Georgia's
5 Court of Appeals' statements in a prior decision referring to "broad considerations of public policy
6 against limiting venue by contract" was later disapproved in a subsequent decision from the court in
7 *Harry S. Peterson Co. v. National Union Fire Insurance Co*., 434 S.E.2d 778 (Ga. Ct. App. 1993). *Id*.
8 Rather, the court concluded that the appeal was governed by cases "upholding the validity of forum
9 selection clauses in contracts." *Id*. The court therefore reversed the trial court's ruling canceling the
10 Ohio judgment against the Georgia defendant. *Id*. at 573.

11 Finally, Plaintiff cites *Huddle House* in support of its challenge. In that case, Paragon Foods
12 sued Huddle House in Dougherty County for trespass, breach of contract, and tortious interference with
13 contractual relations. 587 S.E.2d at 846. After the trial court denied in part Huddle House's motion to
14 dismiss for improper venue or to transfer venue to DeKalb County, Huddle House appealed.[3] The Court
15 of Appeals, however, affirmed the trial court's ruling. In reaching its decision, the court reasoned:

> In *Brinson v. Martin*, [469 S.E.2d 537 (Ga. Ct. App. 1996)], which is relied upon by Huddle House, we held that cases "where no Georgia law specifically governs venue, and where *more than one state and its citizens* are involved, [forum selection] clauses are *prima facie* valid and should be enforced unless enforcement is shown by the restisting party to be 'unreasonable' under the circumstances." In this case, however, both paragon and Huddle House are Georgia corporations and all acts giving rise to the action were alleged to have occurred in Georgia. *Fidelity & Co. of Maryland v. Gainesville Iron Works* applies to this action because this is an intrastate conflict and there is an applicable Georgia statute, OCGA § 14-2-510, which governs venue. [] In such a case, *Fidelity* holds that a contractual provision limiting venue is unenforceable against public policy. []

23 *Id*. at 846. Accordingly, the Court of Appeals held that "because the venue selection provisions were
24 unenforceable the trial court did not err to the extent that it found those provisions did not apply to the
25 tort claims." *Id*. at 847.

---

[3]Specifically, the trial court found that Paragon's claims for breach of contract and tortious interference with contractual relations were subject to the forum selection clause, and thus Paragon had to bring them in DeKalb County. However, the court held that Paragon's trespass claim was not controlled by the forum selection provision.

6

Although not cited by Plaintiff, the Georgia Court of Appeals' decision in *Harry S. Peterson Company, Inc. v. National Union Fire Insurance Company*, 434 S.E.2d 778 (Ga. Ct. App. 1993), rejected an argument premised on *Fidelity* similar to the one Plaintiff advances. In that case, the trial court granted a defendant's motion to dismiss for improper venue based on a forum selection clause in a surety bond on which the plaintiff was suing. 434 S.E.2d at 779. The clause restricted the parties to litigating disputes in the state or district court where the construction project was situated. *Id*. at 781. Although the construction project in that case was situated in Virginia, the plaintiff filed suit in Georgia. *Id*. at 779. The trial court granting the defendant's motion to dismiss for improper venue, and the plaintiff appealed. On appeal, the plaintiff argued that *Fidelity* and *Cartridge Rental Network v. Video Entertainment*, 209 S.E.2d 132 (Ga. Ct. App. 1974), established that "[a]ll venue selection contract clauses are against Georgia public policy and will not be enforced by Georgia courts." *Id*. at 782. The court, however, rejected the plaintiff's argument that *Fidelity* and *Cartridge* controlled, noting that "both of these cases deal with intrastate transaction." *Id*.

Examining these decisions, the Court agrees with Defendants that the proposition that Plaintiff relies on from *Fidelity* that forum selection clauses designating a venue different from one set by state statute are void is limited to cases involving <u>intrastate</u> disputes between Georgia companies. Particularly, in both *Regency Mall* and *Harry S. Peterson Company*, the Georgia Court of Appeals expressly stated that Georgia's public policy against contractual choice of forum provisions does not extend to situations where one of the contracting parties is a non-Georgia entity and the contractual dispute exceeds Georgia's borders, thereby limiting the reach of the principle articulated in *Fidelity*. This assessment is bolstered by a treatise on Georgia contract law, which summarizes the current state of Georgia's law regarding contractual forum selection provisions as follows:

> In two cases in the early 1970s, the Georgia Court of Appeals held that contractual provisions providing for venue in certain counties were contrary to public policy and therefore void. [] Later cases, however, have limited the holdings of these cases to intrastate contracts only. [] Although there is some confusion in the cases between venue and personal jurisdiction, [] it appears that Georgia courts will enforce a forum or venue selection clause involving parties residing in different states, including a clause that requires that litigation be brought in a particular Georgia county. []

John K. Larkins, Jr., *Georgia Contracts: Law & Litigation* §1-9 (2005). This statement of the law is

consistent with this Court's reading of Georgia decisional law regarding the validity of forum selection clauses. Here, the dispute underlying Plaintiff's Complaint concerns interstate commerce between Georgia-based and non-Georgia-based companies. Thus, based on the foregoing cases, the forum selection clause is not subject to the rule set forth in *Fidelity*. Rather, the forum selection clause is *prima facie* valid. *See Huddle House*, 587 S.E.2d at 846. Because Plaintiff has failed to present any argument persuading this Court that the choice of forum clause in the Card Services Agreement offends Georgia law or public policy, Defendants are entitled to enforce the clause.

Nevertheless, Plaintiff makes two subsidiary arguments against enforcement of the choice of forum clause. First, Plaintiff argues that because the Class Action Fairness Act had not been enacted at the time the parties executed the card Services Agreement in July 2004, Plaintiff "could not have waived federal court jurisdiction because none existed." Plaintiff's argument, however, is unconvincing. As Defendant points out, Plaintiff's argument presumes that, at the time Plaintiff signed the Card Services Agreement, Plaintiff could not have conceived that its dealings with Defendants might lead to a dispute that Plaintiff could litigate in federal court - whether founded on a federal question or on diversity jurisdiction. Plaintiff has not presented any reason why it could not have made this assessment at the time of contracting. Moreover, the fact that Congress provided a new basis for federal jurisdiction subsequent to the parties' execution of their agreement does not vitiate the choice of forum provision. The Court therefore rejects this argument as a basis for not enforcing the provision.

Second, Plaintiff argues that, because Mercury is not a party to the card Services Agreement, it lacks standing to raise the forum selection clause as a basis for dismissal. In response, Defendants argue that Plaintiff's allegations support a finding that Mercury has standing to enforce the forum selection clause. In support, Defendants argue that in *Manetti-Farrow*, the Ninth Circuit recognized that a non-party may enforce a forum selection clause if the non-party's alleged conduct is "so closely related to the contractual relationship" that the clause should apply to it, as well. 858 F.2d at 514 n.5. Defendants point out that Plaintiff has alleged that "Mercury, working with and on behalf of Global and HSBC, solicited Plaintiff to sign the Card Services Agreement," and that "Mercury concealed the fact that it would, as the billing agent for Global and HSBC, assist Global and HSBC in over-billing Plaintiff on its monthly bills for amounts not disclosed in the card Services Agreements." (Compl. ¶29.)

8

Additionally, Plaintiff alleged that "For its work in securing Plaintiff as a customer, Mercury receives a portion of the monies generated from the processing of Plaintiff's credit and debit card processing transactions." (*Id.*) Based on these allegations, Defendants contend that the instant case is distinguishable from those Plaintiff has cited, where the non-party did not begin dealing with the signatories until years after the contract was executed and demonstrated an unwillingness to be bound by its terms. The Court agrees with Defendants. According to the allegations in Plaintiff's Complaint, Mercury was actively involved in both procuring the Card Services Agreement for the other Defendants, and in billing and collecting fees under the Card Services Agreement for the other Defendants. Thus, the Court finds that Mercury's alleged conduct is so closely related to the Card Services Agreement between Plaintiff and the other Defendants, that Mercury has standing to enforce the provision.

### C. Conclusion

In sum, the Court finds that Plaintiff has failed to present any meritorious basis preventing enforcement of the forum selection clause in Paragraph 17 of the parties' Card services Agreement. Accordingly, because the parties agreed that all disputes relating to the Agreement shall be litigated in DeKalb County Court in Georgia, venue in the Northern District of California is improper. The Court therefore **GRANTS** Defendants' Motion to Dismiss under Rule 12(b)(3).

### III. Motion to Dismiss for Failure to State a Claim

Alternatively, Defendants move to dismiss Plaintiff's claim for violation of California's Unfair Competition Law pursuant to Rule 12(b)(6) on the ground that the Agreement specifies that Georgia law governs all disputes arising out of or relating to the Agreement. Because the Court finds that dismissal is proper pursuant to Rule 12(b)(3) for improper venue, the Court **DENIES** Defendants' 12(b)(6) Motion as moot.

///

///

///

///

9

IV.     Conclusion.

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint due to Improper Venue; and **DENIES AS MOOT** Defendants' Motion to Dismiss for failure to state a claim.

**IT IS SO ORDERED.**

Dated:     9/25/2006

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE